UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:10-CR-22-1-F

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| ROGER RAPALO-AMADOR, | ) | |
| Defendant. | ) | |

This matter came before the court for hearing on the defendant's Motion to Suppress [DE- 59] on July 22, 2010. The defendant, Roger Rapalo-Amador ("Rapalo-Amador") was present with his attorney, Mark Ward, and with interpreters Rudy and Cynthia Cauldron. The Government was represented by Assistant United States Attorney ("AUSA") Jennifer Wells.

AUSA Wells announced at the outset of the hearing that the Government did not intend to seek introduction at trial of any alleged statement made to law enforcement officers by Rapalo-Amador. Defense counsel Ward confirmed that the only issue for resolution by the court at the hearing was the sufficiency of the evidence contained in the affidavit ("Eason's Affidavit") of Special Kellie Eason, Special Agent of the North Carolina State Bureau of Investigation presented to the state Superior Court judge to support a finding of probable cause for issuance of the search warrant. Ward emphasized that the only evidence relevant to that determination was that contained in Eason's Affidavit. Ward incorporated Eason's Affidavit into his written Motion to Suppress.

Because it is a sworn document executed by a law enforcement officer who also presented live testimony under oath during the suppression hearing, based on her personal knowledge and that of fellow law enforcement officers investigating this case, the court also INCORPORATES Eason's Affidavit herein by reference. Material factual assertions contained in Eason's Affidavit are credible and reliable, and are consistent with those elicited during the hearing. To the extent the affidavit contains facts in addition to those reiterated at the hearing,

the court finds them credible and reliable as well. The court deems it inexpedient to repeat as findings of fact herein those extensive factual allegations set forth at length and in great detail in Eason's Affidavit.

To establish probable cause for the issuance of a search warrant based in part on an informant's hearsay statements, it is necessary that a judicial officer consider "all the circumstances set forth in the affidavit . . ., including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The degree to which an informant's story is corroborated also may be an important factor. *See United States v. Hodge*, 354 F.3d 305, 309 (4th Cir. 2004) (citing *United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir. 1993)). A reviewing court, on motion to suppress a warrant or on appeal, owes to the issuing judicial officer "great deference," seeking "simply to ensure that the [issuing judicial officer] had a substantial basis for concluding that probable cause existed." *United States v. Richardson*, 607 F.3d 357, 369 (4th Cir. 2010) (internal citations omitted).

The Government called as its first witness Special Agent Frank Brostrom of the Charlotte Office of the Federal Bureau of Investigation ("FBI") assigned to the Fayetteville, North Carolina, resident agency. After he began describing the inception of the investigation of Rapalo-Amador, defense counsel objected to presentation of any facts outside "the four corners of the affidavit." The Government thereafter elicited testimony from Special Agent Brostrom corroborative of the sworn testimony contained in Eason's Affidavit. Defense counsel objected to the Government's introduction of any live testimony that was not also contained in Eason's Affidavit.

Notwithstanding his insistence that the court's consideration of the sufficiency of Eason's Affidavit be limited to "the four corners" of that document, defense counsel elicited testimony from Special Agent Brostrom that the person referred to in the affidavit as "Confidential Informant #1" ("CI #1") initially had told investigating agents that his source was

"Jimmy," but later admitted that his source's name was Matthew Teachey. Defense counsel argued that *omission* from Eason's Affidavit of CI #1's falsely naming "Jimmy" cast serious doubt on the credibility of CI #1. Counsel contended that the "Jimmy" evidence contained facts known by the investigating officers but withheld from the Superior Court Judge who, had he been aware of that evidence, would not have found probable cause to issue the search warrant. In addition, defense counsel elicited testimony from Special Agent Brostrom confirming that Eason's Affidavit omitted the fact that Teachey falsely had represented to CI #1 that he had an "inside track" with the FBI. Special Agent Brostrom testified that investigating officers did not perceive that information to have any relevance to the presentation of a factual basis for probable cause for the search warrant at issue here.

Defense counsel's theory based on the "Jimmy" and "inside track" testimony is patently incompatible with his vehement insistence that the court limit its consideration to the evidence contained within the four corners of Eason's Affidavit. Nevertheless, Special Agent Brostrom explained that "Jimmy" was an alias used by CI #1 in an attempt to conceal the identity of Matthew Teachey, who was CI #1's mother's boyfriend. Later during that same interview of CI#1 on March 9, 2009, CI #1 revealed the name of his source, in fact, was Matthew Teachey. The court finds that, even if consideration of the evidence were appropriate, this "Jimmy" and "inside track" theory for invalidating the search warrant is meritless.

Defense counsel's second theory for suppression also depends upon "facts" outside the "four corners of the affidavit." Specifically, defense counsel suggests that information conveyed to the investigating agents by CI #1 and Matthew Teachey (CI #2) is suspect because they had an opportunity to confer together, unobserved by law enforcement officers, and concoct false accusations against Rapalo-Amador. In support of this theory, defense counsel had Special Agent Brostrom admit that CI #1 had been released following his arrest in Milwaukee, Wisconsin, on March 6, 2009, and that he self-reported to the officers a couple of days later to

3

make a monitored telephone call to Matthew Teachey (also referred to in Eason's Affidavit as "CI #2"). Defense counsel theorizes that, during his short time out of law enforcement custody, CI #1 conferred with his mother's boyfriend, Teachey, to cook up a false story implicating Rapalo-Amador.

Not only does this theory suggest facts not contained within the four corners of Eason's Affidavit and is entirely speculative, it also is completely unsupported by any other evidence of record. Moreover, this theory flunks the common sense test in light of the sworn evidence before the court and contained in Eason's Affidavit.

Defense counsel's third contention supporting his Motion to Suppress is that Eason's Affidavit fails to implicate the premises to be searched. That suggestion simply is incorrect; the affidavit describes the premises in great detail in reliance on statements of CI #1 and Teachey to investigating officers, and corroborated by aerial photographs of the premises made by the Air Wing of the State Bureau of Investigation the day prior to execution of Eason's Affidavit and issuance of the search warrant. Teachey, *who was the owner of the premises* and leased it to Rapalo-Amador and others, viewed the photographs and confirmed the location and description, not only of buildings on site and their uses, but also of vehicles depicted in the photographs. Both CI #1 and Teachey previously had described to investigating officers their observing and engaging in regular, continuous drug transactions with Rapalo-Amador on that premises and the use of those vehicles in transporting controlled substances. The alleged drug transactions involved hundreds of pounds of marijuana – Teachey told investigating officers, "literally tons" – and very large sums of money over a long period of time. The informants disclosed their belief that the drug transactions and those involved in them had specific violent gang affiliations, and CI #1 described observing assault-type and large-caliber rifles inside the residence on the premises.

On March 12, 2009, Teachey placed a monitored telephone call to a person identified as "Roger" to set up a purchase of 150 pounds of marijuana the next day, then called the next day to confirm the transaction which was to take place at 5120 Cornwallis Road, Turkey, North Carolina. Teachey also gave law enforcement authorities a physical description, not only of the premises, which could not be seen from the road, but also of the defendant, "Roger," himself.

The court is unconvinced by defense counsel's arguments and his theories attacking the efficacy of Eason's Affidavit to supply a sufficient factual basis for the Superior Court judge's finding of probable cause to issue a search warrant for the premises at 5120 Cornwallis Road. The Supreme Court has cautioned,

> we have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." . . . "A grudging or negative attitude by reviewing courts toward warrants," . . . is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant "courts should not invalidate . . . warrant[s] by interpreting affidavit [s] in a hypertechnical, rather than a commonsense, manner."

*Illinois v. Gates*, 362 U.S. 213, 236 (1983) (internal citations omitted).

Based on the evidence produced during the hearing on the defendant's Motion to Suppress, together Eason's Affidavit, which Affidavit is incorporated herein by reference, the court finds that a totality of the circumstances leads to the conclusion that Eason's Affidavit contained a substantial basis for the state Superior Court judge's finding that probable cause existed for issuance of the premises search warrant at issue here. *See Gates*, 462 U.S. at 238 (abandoning the *Aguilar* and *Spinelli*, two-pronged test for assessing the reliability of informant information to support probable cause); *see also Hodge*, 354 F.3d at 309-11 (rejecting suggestion that informant reliability must be shown by informant's past provision of accurate information) (relying on *United States v. Porter*, 738 F.2d 622 (4th Cir. 1984) (en banc)). Far from arising from an anonymous "tip," this investigation was methodically developed by

cooperating law enforcement agencies beginning with the interview of a Milwaukee arrestee (CI #1) who cooperated with law enforcement and named his source of drugs (Teachey) who, in turn, named and cooperated against his own source who allegedly is the defendant, Rapalo-Amador. The informants had every motivation to cooperate with law enforcement authorities and to provide truthful information. Here, as in *United States v. White*, 549 F.3d946 (4th Cir 2008), investigating officers met with the informants face-to-face and in close quarters where they easily could assess their credibility. Significantly, Eason's Affidavit supporting the search warrant contains ample corroborating information obtained by investigating agencies confirming that supplied by the informants.

Even if it could be said that the search warrant was issued absent a sufficient showing of probable cause, the court finds the evidence presented herein by affidavit and live testimony supports a finding that the law enforcement officers' reliance on the Superior Court judge's determination of probable cause and on the technical sufficiency of the search warrant at issue was objectively reasonable. *See United States v. Leon*, 468 U.S. 897, 922-23 (1984) (holding that a factually supported "good faith" exception to warrant requirement satisfies Fourth Amendment guarantee against unreasonable searches). Therefore, neither the search warrant nor the evidence revealed in reliance thereon, is subject to suppression upon a totality of the circumstances in this case.

For the foregoing reasons and those stated in the Government's Response to Defendant's Motion to Suppress [DE-59], Rapalo-Amador's Motion to Suppress [DE-59] is DENIED.

SO ORDERED. This, the 26th day of July, 2010.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge

6

Case 7:10-cr-00022-F Document 77 Filed 07/26/10 Page 6 of 6